STATE OF CONNECTICUT *v.* CELAL ORHAN
(AC 17003)

Lavery, Hennessy and Sullivan, Js.

Argued September 21, 1998—officially released March 16, 1999

*Richard T. Meehan, Jr.*, with whom, on the brief, were *Richard T. Meehan, Sr.*, and *Edward J. Gavin*, for the appellant (defendant).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *John C. Smriga*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, J. The defendant, Celal Orhan, appeals from the judgment of conviction, following a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2)[1] and risk of injury to a child in violation of General Statutes (Rev. to 1995) § 53-21.[2] We affirm the judgment of the trial court.

---

[1] General Statutes § 53a-70 provides in relevant part: "(a) A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes (Rev. to 1995) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, fined not

The jury reasonably could have found the following facts. On a Friday evening in July, 1995, the victim, who was then nine years old, and her older sister, S, spent the night with their younger cousin, M, at his home to celebrate his birthday. M lived in Bridgeport with his mother and the defendant in a two bedroom apartment. The children slept in M's bedroom. S slept on a mattress, the victim slept on a box spring, and M slept in a sleeping bag on the floor.

The victim, who was wearing a T-shirt and underwear, was sleeping on her stomach when the defendant came into the room, leaned over the sleeping bag and touched the victim's buttocks by putting his hand inside her underwear. He then moved his hand between the victim's legs, touched her vagina and put his finger into her vagina, at which time the victim moved. When the victim moved, the defendant removed his hand and left the room.

The next morning, the victim told S what the defendant had done to her during the night. During the day, the victim and S attempted to reach their mother by telephone. When the victim was finally able to talk to her mother, she insisted that her mother come and get her and take her home despite the fact that the victim and S had originally planned to spend another night at M's home. After she picked them up, the girls' mother asked them why they did not want to spend another night at M's house. At that time, the victim told her mother what the defendant had done to her. The victim's mother contacted the Bridgeport police department later that night and took the victim to the police station on Sunday.

Three days after the defendant learned of the victim's accusations, he fled to Florida where he remained until

more than five hundred dollars or imprisoned not more than ten years or both."

he was arrested on charges stemming from the incident. Following his conviction, the defendant appealed, claiming that the trial court improperly (1) denied his motion for judgment of acquittal on the count of sexual assault in the first degree because there was insufficient evidence of penetration to support a guilty verdict beyond a reasonable doubt, (2) ruled on evidentiary matters by (a) permitting constancy of accusation testimony in violation of *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996), (b) restricting the defendant's cross-examination of the victim and (c) refusing to permit the defendant to testify as to the hearsay statement of his brother-in-law and (3) instructed the jury on the constancy of accusation testimony. We disagree.

I

The defendant first claims that the trial court improperly denied his motion for judgment of acquittal on the count of sexual assault in the first degree, specifically that there was insufficient evidence of penetration to support the allegation of sexual intercourse. The defendant claims that, because the victim testified on direct examination but not on cross-examination that the defendant put his finger into her vagina,[3] there was a dispute as to whether there was penetration sufficient to constitute sexual intercourse. We are not persuaded.

---

[3] The defendant's counsel conducted the following cross-examination of the victim:

"Q. Okay. And you claim that he reached down and touched you on the behind, correct?

"A. Yes.

"Q. And touched you just for a short time, correct?

"A. Yes.

"Q. And you claimed that he then reached his hand around and touched you on your vagina, correct?

"A. Yes.

"Q. As soon as you felt that you moved, is that correct?

"A. Yes.

"Q. And that caused him to move his hand, is that correct?

"A. Yes."

"When reviewing sufficiency of the evidence claims, we employ a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. *State* v. *Salz*, 226 Conn. 20, 31, 627 A.2d 862 (1993). Second, we determine whether, from that evidence and all the reasonable inferences which it yields, a [trier of fact] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt. *State* v. *Hooks*, 30 Conn. App. 232, 238, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993); *State* v. *Salz*, supra, 31." (Internal quotation marks omitted.) *State* v. *Watson*, 50 Conn. App. 591, 604, 718 A.2d 497, cert. denied, 247 Conn. 939, 723 A.2d 319 (1998).

" '[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence.' *State* v. *Sivri*, 231 Conn. 115, [132] 646 A.2d 169 (1994). 'On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty.' Id., 134." *State* v. *Rogers*, 50 Conn. App. 467, 473, 718 A.2d 985, cert. denied, 247 Conn. 942, 723 A.2d 319 (1998).

"A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age . . . ." General Statutes § 53-70 (a). " 'Sexual intercourse' means vaginal intercourse . . . . Penetration, however slight, is sufficient to complete vaginal intercourse . . . . Penetration may be committed by an object manipulated by the actor into the genital . . . opening of the victim's body." General Statutes § 53a-65 (2).

The defendant concedes that digital penetration, however slight, is sufficient to constitute sexual intercourse. See *State* v. *Hermann*, 38 Conn. App. 56, 60, 658 A.2d 148, cert. denied, 235 Conn. 903, 665 A.2d 904 (1995); *State* v. *Grant*, 33 Conn. App. 133, 141, 634 A.2d 1181 (1993). On direct examination, the victim testified that the defendant put his finger into her vagina. The defendant argues that because the victim did not repeat those words on cross-examination, there was insufficient evidence from which the jury could conclude that there was penetration. The defendant's argument is not persuasive. Defense counsel controlled the scope of his cross-examination, which he limited, in part, to the defendant's touching the victim's buttocks and vagina and to the length of time of such touching. Although he was free to ask the victim about any part of her direct testimony, defense counsel did not question the victim about the defendant's having inserted his finger into her vagina. The defendant cannot now complain, therefore, that because the victim did not repeat her testimony as to the full extent of his unlawful touching that there was insufficient evidence by which the jury could have found the defendant guilty beyond a reasonable doubt.

The jurors are the arbiters of fact, and it is their duty to pass upon the credibility of a witness, even when there is inconsistent testimony. See *New London Federal Savings Bank* v. *Tucciarone*, 48 Conn. App. 89, 99, 709 A.2d 14 (1998). Here, the testimony was not inconsistent. The victim merely did not testify more than once that the defendant placed his finger into her vagina. Our laws do not require her to do so. See *State* v. *Dabkowski*, 199 Conn. 193, 199–203, 506 A.2d 118 (1986). If the defendant wanted to discredit the victim's testimony, he was free to question her about the specifics of her prior testimony on cross-examination. See

id., 202. He made the tactical decision not to do so. The trial court, therefore, properly denied the defendant's motion for a judgment of acquittal.

II

Next, the defendant claims that the trial court improperly ruled on evidentiary matters because it (1) permitted the victim's mother to testify as a constancy of accusation witness and permitted S and the victim's mother to testify as to the substance of the victim's complaints in violation of *State* v. *Troupe*, supra, 237 Conn. 284, (2) refused to permit the defendant to testify as to certain hearsay statements made by his brother-in-law and (3) restricted the defendant's cross-examination of the victim. We do not agree.

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there is an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Cole*, 50 Conn. App. 312, 330–31, 718 A.2d 457, cert. granted on other grounds, 247 Conn. 937, 722 A.2d 1217 (1998). "It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Internal quotation marks omitted.) *Wright* v. *Hutt*, 50 Conn. App. 439, 445, 718 A.2d 969, cert. denied, 247 Conn. 939, 723 A.2d 320 (1998).

"Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *Paige* v. *St. Andrew's Roman Catholic Church Corp.*, 247 Conn. 24, 37, 718 A.2d 425 (1998). "It is a fundamental rule of appellate review of evidentiary rulings that if error is not of constitutional dimensions, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him. . . . *Higgins* v. *Karp*, 243 Conn. 495, 506, 706 A.2d 1 (1998)." (Internal quotation marks omitted.) *Wright* v. *Hutt*, supra, 50 Conn. App. 453.

A

The defendant's first claim of evidentiary error is that the trial court improperly permitted S and the victim's mother to provide constancy of accusation testimony in violation of *State* v. *Troupe*, supra, 237 Conn. 284. Specifically, the defendant claims that the state failed to provide an adequate foundation for the constancy of accusation testimony of the victim's mother and that the constancy of accusation testimony of both S and the victim's mother went beyond the bounds permitted by *Troupe*. We disagree.

" 'The constancy of accusation doctrine is well established in Connecticut and recently has been reaffirmed by [our Supreme Court]. See *State* v. *Troupe*, [supra, 237 Conn. 297–98, 303–304]; *State* v. *Kelley*, 229 Conn. 557, 565, 643 A.2d 854 (1994); *State* v. *Dabkowski*, [supra, 199 Conn. 199–203]. The doctrine originally was premised on the arguably inaccurate premise that, if a woman had been sexually assaulted, it would be "natural" for her to confide in others. See, e.g., *State* v. *De Wolf*, 8 Conn. 93, 99 (1830). Until *State* v. *Troupe*, supra, 304, we permitted witnesses to testify about the details of a victim's accounts of the alleged sexual

assault on the theory that, if the victim's story were true, "the evidence would show constancy in the charge even to the details, and the truth would the more clearly appear." *State* v. *Kinney*, 44 Conn. 153, 156–57 (1876); *State* v. *De Wolf*, supra, 99. In *State* v. *Troupe*, supra, 284, however, we restricted the doctrine so that a constancy of accusation witness could testify only to the fact and the timing of the victim's complaint. Even so limited, the evidence would be admissible solely for corroboration of the victim's testimony, and not for substantive purposes. Id., 304.' *State* v. *Sullivan*, 244 Conn. 640, 645, 712 A.2d 919 (1998)." *State* v. *Marshall*, 246 Conn. 799, 805–806 n.9, 717 A.2d 1224 (1998).

Our Supreme Court concluded "that a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator." *State* v. *Troupe*, supra, 237 Conn. 304. "In determining whether to permit such testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant." Id., 305.

1

During trial, the defendant objected to the introduction of the constancy of accusation testimony of the victim's mother, claiming that the victim had not testified that she told her mother what the defendant had done to her. After the state made an offer of proof, the trial court overruled the defendant's objection, stating that in order for the victim's mother to testify as a constancy of accusation witness, it was not necessary

for the victim to have identified her as a person to whom she had told the details of the assault. The state concedes that the trial court was mistaken as to the requirements of *Troupe* but argues that although the victim did not explicitly testify that she told her mother what the defendant did to her, there was sufficient circumstantial evidence to lay the foundation necessary for her constancy of accusation testimony.[4] We agree with the state.

The state, at the defendant's request, made an offer of proof regarding the constancy of accusation testimony proffered by the victim's mother. The victim's mother received telephone messages from her workplace that the victim was trying to contact her. Her answering machine recorded numerous hang up calls identified as having come from the site of M's birthday party. The

---

[4] The victim testified as follows on direct examination:

"Q. When did you talk to your mom?

"A. Well, we tried to call her the next day, but we couldn't reach her.

\* \* \*

"Q. [D]o you remember when you first tried to call your mom?

"A. I called the store where she works and my brother answered and she wasn't there because then I remembered it was her day off.

"Q. Okay. And did you try to get her at home then as well?

"A. Yes.

"Q. Was she at home?

"A. No.

"Q. Now, according to your original plan, were you supposed to stay there another night as well?

"A. Yes.

"Q. What were you calling your mother for at that time?

"A. To tell her what happened.

"Q. Now, do you remember if at some point your mother came and took you home?

"A. Yes.

\* \* \*

"Q. At some point did you go to the police?

"A. Yes.

"Q. All right. Do you remember if you went that Saturday or did you go some other time?

"A. We went Sunday."

victim's mother then telephoned the victim at the party. The victim asked her mother to come and get her. The victim's mother asked the victim to follow the original plan by staying with M until Sunday, but the victim insisted that her mother come for her at that time. The victim told her mother what had happened, and that evening the victim's mother contacted the Bridgeport police.

"There is no distinction between direct and circumstantial evidence [so] far as probative force is concerned . . . . *State* v. *Heinz*, 193 Conn. 612, 625, 480 A.2d 452 (1984). In fact, circumstantial evidence may be more certain, satisfying and persuasive than direct evidence. . . . *State* v. *Scales*, [38 Conn. App. 225, 229, 660 A.2d 860 (1995)]." (Internal quotation marks omitted.) *State* v. *Teti*, 50 Conn. App. 34, 39, 716 A.2d 931, cert. denied, 247 Conn. 921, 722 A.2d 812 (1998). " '[T]riers of fact must often rely on circumstantial evidence and draw inferences from it. . . . There is no rule of law which forbids the resting of an inference on facts whose determination is the result of other inferences.' . . . *Blados* v. *Blados*, [151 Conn. 391, 395, 198 A.2d 213 (1964)]." *Paige* v. *St. Andrew's Roman Catholic Church Corp.*, supra, 247 Conn. 32 n.9. "In criminal cases, including the most serious ones, the fact that an accused was the person who committed the criminal act may be proved by circumstantial evidence. *State* v. *Rivera*, 32 Conn. App. 193, 201, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993). It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. *State* v. *Perez*, 183 Conn. 225, 227, 439 A.2d 305 (1981)." (Internal quotation marks omitted.) *State* v. *Jones*, 50 Conn. App. 338, 362–63, 718 A.2d 470 (1998).

According to *Troupe*, the victim of a sexual assault must, among other things, identify the individuals to

whom she or he reported the assault prior to that individual's being permitted to give constancy of accusation testimony. We see no reason why circumstantial evidence cannot be used to identify the individuals to whom the victim reports an incident. In the case before us, there was evidence that the victim made numerous attempts to telephone her mother to ask to be taken home rather than spend another night in the defendant's home. The victim's mother went to get her daughters. Once the girls were in the car, the victim's mother insisted that they tell her why they wanted to go home. The family sat in the car at the side of the road for some time talking. That evening, the victim's mother telephoned the Bridgeport police department, and she took the victim to the police station the next day. The trial judge could easily infer that the victim reported the events of the previous night to her mother, thus satisfying the *Troupe* foundation requirement. The trial court, therefore, properly permitted the victim's mother to testify as a constancy of accusation witness.

### 2

The defendant also claims with respect to the constancy of accusation testimony that the trial court improperly permitted S and the victim's mother to provide testimony concerning details of the complaint beyond that permitted by *State* v. *Troupe*, supra, 237 Conn. 305. Specifically, the defendant takes exception to S's testifying that the victim told her that the defendant "came in the middle of the night and he touched me where he shouldn't have," and to the victim's mother testifying that the defendant "had touched her private parts while she was sleeping . . . the night before."

In modifying the fresh complaint rule, our Supreme Court reasoned, in part, that "a defendant has an interest in not being unreasonably burdened by such accrediting or supporting evidence . . . . Concerns about

such evidence are magnified if the victim has reported the alleged offense to a number of persons, all of whom are permitted to testify about the details of the complaint." Id., 302–303. "Accordingly, we conclude that a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, *including, for example*, the time and place of the attack or the identity of the alleged perpetrator." (Emphasis added.) Id., 304. "Moveover, we recognize that the defendant, on cross-examination of a constancy witness, may elicit details of the victim's complaint for the purpose of demonstrating inconsistencies between the victim's trial testimony about the sexual assault and the victim's report of the incident. In such cases, the effect of our modification of the constancy of accusation doctrine is merely to shift the timing of the introduction into evidence of the details." Id., 304 n.19.

The controlling language from *Troupe* does not limit the identifying information that may be provided. It limits only the extent of the information provided. Our Supreme Court merely gave examples of how a sexual assault might be identified; it did not hold that that was the only testimony that could be provided.

Here, the testimony of S and the victim's mother indicated only that the defendant had touched the victim where he should not have. Their testimony did not include details critical to the state's case, namely penetration. "[W]hether evidence is admissible under the constancy of accusation doctrine is an evidentiary question that will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Beliveau*, 237 Conn. 576,

592, 678 A.2d 924 (1996). The defendant was not unduly burdened by accrediting or supporting evidence because the admission of the testimony was not contrary to the rationale of *Troupe* in limiting the testimony of constancy of accusation witnesses. The trial court, therefore, properly admitted the constancy of accusation testimony of S and the victim's mother.

## B

The defendant's second evidentiary claim is that the trial court improperly restricted his cross-examination of the victim. Specifically, the defendant claims that the trial court improperly refused to let him question the victim as to whether she had ever lied to S or her mother and whether she was able to differentiate dreams from reality.[5] We disagree.

[5] The following exchange took place during cross-examination of the victim:

"[Defense Counsel]: All right. Can you tell me, have you ever had a situation where [S]—with [S] where you ever told [S] something that wasn't true?

"[Assistant State's Attorney]: Objection, Your Honor.

"The Court: Sustained.

"[Defense Counsel]: Have you ever had a situation where [S] has told you something that wasn't true?

"[Assistant State's Attorney]: Objection.

"The Court: Sustained. Disregard both questions and answers, if any.

"[Defense Counsel]: Have you ever had an occasion to tell your mother something that was not true?

"[Assistant State's Attorney]: Objection as well, Your Honor.

"The Court: Sustained.

"[Defense Counsel]: Now, you were sleeping [at] Aunt Lucille's house on this weekend, correct?

"[The Witness]: Yes.

"[Defense Counsel]: Can you tell me whether or not prior to this date had you ever had a problem with having bad dreams at night?

"[The Witness]: No.

"[Defense Counsel]:Never had a dream where you woke up in the middle of the night frightened about something?

"[The Witness]: No, not there.

"[Defense Counsel]: I'm sorry?

"[The Witness]: Not there.

"[Defense Counsel]: How about anywhere else?

"[Assistant State's Attorney]: Objection. Whether she ever had a bad dream

"Our analysis of the defendant's claim is guided by the familiar constitutional guidelines relevant to cross-examination by the defendant in a criminal trial. It is axiomatic that the defendant is entitled fairly and fully to confront and to cross-examine the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . . In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . .

"The confrontation clause does not, however, suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . Only relevant evidence may be elicited through cross-examination. . . . The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable. . . .

---

where she woke up and was frightened, I ask counsel to make some kind of offer.

"[Defense Counsel]: I would like to explore with her if she had the opportunity to have a dream that she woke up believing the dream was true. I think it goes to the question of what actually happened that night and her ability to perceive it. I think it is common knowledge that everybody has dreams like that.

"The Court: Oh, I don't think so. I don't agree on common knowledge either. She said no, so the inquiry is over on that score. Let me be more accurate. She said no, not at that house.

"[Defense Counsel]: That is correct.

"The Court: Did you ever have them anywhere? And it is sustained, the objection. Yes, go ahead."

"The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . .

"The proffering party bears the burden of establishing the relevance of the offered testimony. Unless a proper foundation is established, the evidence is irrelevant. . . . Relevance may be established in one of three ways.

"First, the proffering party can make an offer of proof. . . . Second, the record can itself be adequate to establish the relevance of the proffered testimony. . . . Third, the proffering party can establish a proper foundation for the testimony by stating a good faith belief that there is an adequate factual basis for his or her inquiry. A good faith basis on the part of examining counsel as to the truth of the matter contained in questions propounded to a witness on cross-examination is required. . . . A cross-examiner may inquire into the motivation of a witness if he or she has a good faith belief that a factual predicate for the question exists." (Citations omitted; internal quotation marks omitted.) *State* v. *Beliveau*, supra, 237 Conn. 584–86.

As in *Beliveau*, the defendant here has failed to persuade us that he had established the relevance of the proposed lines of questioning in the trial court by any of these methods. The defendant relies on differences between the testimony of the victim and that of the defendant and M's mother as to the events that occurred on the night in question. Our review of the transcript reveals that the victim's testimony was different from that of the defendant and M's mother, but there is no evidence that the victim had a propensity to lie or that she was troubled by disturbing dreams. The subject line

of questioning proposed by the defendant on cross-examination was nothing more than a fishing expedition that was irrelevant to the issue before the jury. The trial court, therefore, did not improperly infringe on the defendant's constitutional right to cross-examine the victim.

## C

The defendant's final evidentiary claim is that the trial court improperly refused to let him testify as to the hearsay statement of his brother-in-law to explain why the defendant left Connecticut for Florida shortly after the victim had made her accusation against him. The state concedes that because the defendant offered the alleged statement not for its truth, but to show its effect on the defendant's state of mind, it was not hearsay. The state argues, however, that the trial court's improper failure to let the defendant testify as to the statement was harmless error because the defendant did testify as to the effect the statement had on him. We agree with the state.

The following facts are necessary for our analysis of this claim. On cross-examination, the state elicited from the defendant that several days after the victim made her accusation, he went to Florida, where he remained for eight months until he was arrested and returned to Connecticut to face charges associated with the accusation. On redirect examination, there was evidence that the defendant's brother-in-law was hostile to the defendant and said something that caused the defendant to become fearful and to panic. As a result, the defendant fled Connecticut.[6] The trial court did not permit the

---

[6] The defense counsel conducted the following examination of the defendant:

"Q. [The prosecutor] asked you if you learned that weekend that [the victim] was complaining that you had touched her on the vagina. Do you remember him asking you that question . . . ?

"A. Yes.

defendant to testify as to the statement the brother-in-law made to him. The trial court incorporated this evidence in its charge and told the jury that it could find an innocent explanation for the defendant's flight.

"Flight, when unexplained, tends to prove a consciousness of guilt. *State* v. *Ferrara*, 176 Conn. 508, 516, 408 A.2d 265 (1979). Flight is a form of circumstantial evidence. Generally speaking, all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the

---

\* \* \*

"Q. Where were you when you learned this . . . ?

"A. At my mother-in-law's house.

"Q. Still at the party?

"A. Yes.

"Q. Was [your wife] there?

"A. Yes.

"Q. Was her brother . . . there?

"A. Yes.

\* \* \*

"Q. Did you have a conversation with [him] after you learned about the complaint?

"A. Yes.

"Q. Did [he] say something to you . . . that caused you to leave to go to Florida?

\* \* \*

"A. Yes.

"Q. And did what he say in that conversation have an effect on you . . . ?

\* \* \*

"A. He was yelling at me.

\* \* \*

"Q. Don't tell us what he said. I want you to tell us after hearing what he said how it made you feel.

"A. I got panic. I was—I got nervous and I wanted to leave.

"Q. Is that because you had touched the little girl?

"A. No.

"Q. Is it because of what [he] said to you at the house that night?

"A. Yes.

"Q. Is [he] friendly with you now?

"A. He was never friendly when I met him since the first day."

jury's consideration. *State* v. *Piskorski*, 177 Conn. 677, 723, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). The probative value of evidence of flight depends upon all the facts and circumstances and is a question of fact for the jury. *State* v. *Nemeth*, 182 Conn. 403, 408, 438 A.2d 120 (1980). . . . *State* v. *Wright*, 198 Conn. 273, 281, 502 A.2d 911 (1986)." (Internal quotation marks omitted.) *State* v. *Thomas*, 50 Conn. App. 369, 382–83, 717 A.2d 828, cert. granted on other grounds, 247 Conn. 935, 722 A.2d 1217 (1998).

"[T]he jury . . . was not required to accept the defendant's statement as true. [T]he [jury] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject. *State* v. *Marsala*, 44 Conn. App. 84, 96, 688 A.2d 336, cert. denied, 240 Conn. 912, 690 A.2d 400 (1997). . . . *State* v. *Foster*, 45 Conn. App. 369, 379, 696 A.2d 1003, cert. denied, 243 Conn. 904, 701 A.2d 335 (1997)." (Internal quotation marks omitted.) *State* v. *Pauling*, 47 Conn. App. 483, 487–88, 706 A.2d 981 (1998). "In considering the evidence, the jurors were free either to reject it or to accept it as they saw fit. They were not required to find that the defendant was guilty merely because he fled. *State* v. *Rosa*, 170 Conn. 417, 433, 365 A.2d 1135, cert. denied, 429 U.S. 845, 97 S. Ct. 126, 50 L. Ed. 2d 116 (1976); *State* v. *Delgado*, 13 Conn. App. 139, 144, 535 A.2d 371 (1987)." *State* v. *Thomas*, supra, 50 Conn. App. 384.

"Out-of-court statements to a person are admissible to show his state of mind where his mental state is relevant. *State* v. *Brokaw*, 183 Conn. 29, 32, 438 A.2d 815 (1981); *Zenik* v. *O'Brien*, 137 Conn. 592, 598, 79 A.2d 769 (1951). A person's 'state of mind' can be shown 'from what he heard as well as from what he saw, even though what he heard would be normally classified as

hearsay. . . . The evidence [concerning a third party's statement to the witness] was admissible not to establish the truth of the facts asserted but to show what was in the defendant's mind in testing the reasonableness of his belief . . . .' (Citations omitted.) *Zenik* v. *O'Brien,* supra, 598." *State* v. *Jones,* 205 Conn. 723, 731, 535 A.2d 808 (1988).

"Whether a trial court's erroneous restriction of a defendant's or defense witnesses's testimony in a criminal trial deprives a defendant of his due process right to present a defense is a question that must be resolved on a case by case basis. See *State* v. *Bryant,* 202 Conn. 676, 704, 523 A.2d 451 (1987)." *State* v. *Jones,* supra, 205 Conn. 731. The factual situation before us is similar to that in *Jones.* In both cases, the defendant was able to introduce evidence supporting his contention that his flight was the result of his fear. In *Jones,* our Supreme Court said, "Despite the trial court's erroneous ruling concerning the flight testimony, the defendant was able to present his explanation that fear motivated his flight. Under the circumstances of [*Jones*], the trial court did not deprive the defendant of his due process right to present a defense.

"When a trial error in a criminal case does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the court's error. *State* v. *Ruth,* 181 Conn. 187, 196–97, 435 A.2d 3 (1980). The defendant must show that it is more probable than not that the erroneous action of the court affected the result. Id.; *State* v. *McClain,* 171 Conn. 293, 300, 370 A.2d 928 (1976)." *State* v. *Jones,* supra, 205 Conn. 732.

As in *Jones,* the defendant here had the opportunity to explain the circumstances of his leaving Connecticut, in effect, his state of mind, which the jury was free to believe or not. Therefore, the trial court's improper failure to permit the defendant to testify as to the statement made by his brother-in-law did not affect the trial result.

## III

The defendant's final claim is that the trial court improperly instructed the jury on the constancy of accusation testimony. The defendant contends that the trial court abused its prerogative of fair comment during its instruction on the constancy of accusation evidence by invading the fact-finding process and improperly suggesting that the victim had told S and her mother more details about the defendant's actions than either conveyed through testimony.[7] We are unpersuaded.

---

[7] The defendant took exception to the following portion of the trial court's instructions to the jury: "The next concept I'm going to deal with is a limiting instruction on constancy of accusation. In order for you to understand that, I believe I have to tell you that we have had testimony concerning that through [S] and [the victim's mother]. They both testified that the [victim] told each of them [about] the . . . inappropriate conduct.

"You heard the [victim], so you have a blatant position that the state claims occurred. She laid in bed and that she was fondled on her rear end, as she claimed it, and eventually touched in her vagina, and she said that he has inserted his finger in her vagina. She told the other two, and I limited their ability to tell you what she said, merely that he touched her in an improper place and whatever she told the mother. I leave those to your memory. I don't want to impact on them by repeating them to you. You have heard it today.

"That is a limitation by recent case law out of the Supreme Court, state of Connecticut, June of 1996. I'll read you the limitations so you understand why there is not a full development of what is said by the witness. The Supreme Court says, 'We conclude that a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and the timing of the victim's complaint. Any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge including, for example, the time, the place of the attack, and the identity of the alleged perpetrator.'

"And the constancy rule remains in force, but without the—I don't say benefit, without having the witness' testifying in detail as to each thing they were told by the alleged victim. As you know, statements made out of court by a witness are not admissible because the statements lack the support of the oath that a witness takes in court. There are exceptions to that general rule. We come across one of them in this case. The complaining witness who has testified here in court to the offense that she claims he committed upon her, if that was all there was to present before you, you would ask yourself did she keep silent about it before she came here to the court to

"Our standard of review concerning claims of instructional error is well settled. [J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . The instruction must be adapted to the issues and may not mislead the jury but should reasonably guide it in reaching a verdict. . . . We must review the charge as a whole to determine whether it was correct in law and sufficiently guided the jury on the issues presented at trial. . . . *State* v. *Elijah*, 42 Conn. App. 687, 691, 682 A.2d 506, cert. denied, 239 Conn. 936, 684 A.2d 709 (1996)." (Internal quotation marks omitted.) *Thames River Recycling, Inc.* v. *Gallo*, 50 Conn. App. 767, 774, 720 A.2d 242 (1998).

"The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Therefore, jury instructions need not be exhaustive,

testify. So for the purpose of corroborating her testimony, the state is permitted to use what she said outside of the court. She made a complaint of the injury done her, the conduct.

"This evidence is admitted solely to corroborate her testimony in court. It is to be considered only by you in determining the weight and credibility of the complainant's testimony. The fact that the complainant made a statement is not being offered to prove that it happened, but merely that she claimed it happened to corroborate her in-court testimony. In determining the extent of such corroboration in her statement out of court, you will carefully consider all the circumstances under which they were made. And, in particular, you should consider whether she has been constant and consistent in what she said to the two witnesses that were presented in that fashion, [S] and [the victim's mother]. If you find that, in the reporting to you by those witnesses who received information allegedly from the victim inconsistencies or contradictions, you may utilize those as well, if you find any, to impeach the testimony of [the victim]."

perfect, or technically accurate. Nonetheless, the trial court must correctly adapt the law to the case in question and must provide the jury with sufficient guidance in reaching a correct verdict. . . . *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 603, 662 A.2d 753 (1995)." (Internal quotation marks omitted.) *Thames River Recycling, Inc.* v. *Gallo*, supra, 50 Conn. App. 774–75.

"We therefore consider the proper standard to apply in deciding whether the error was harmless. Both our Supreme Court and this court have stated that whether an instructional error in a criminal case requires reversal of the conviction depends on whether the error is nonconstitutional or constitutional. If the instructional error is nonconstitutional, the defendant has the appellate burden of establishing that it is reasonably probable that the jury was misled. *State* v. *Shifflett*, 199 Conn. 718, 754, 508 A.2d 748 (1986); *State* v. *Mason*, 186 Conn. 574, 585–86, 442 A.2d 1335 (1982); *State* v. *Greene*, 11 Conn. App. 575, 581, 528 A.2d 855, cert. denied, 205 Conn. 804, 531 A.2d 938 (1987). If the instructional error is constitutional, the state has the appellate burden of establishing that there is no reasonable possibility that the jury was misled. *State* v. *Shifflett*, supra [754]; *State* v. *Mason*, supra [585–86]; *State* v. *Greene*, supra [581–82]. In either situation, the inquiry focuses on the degree of likelihood that the error influenced the jury. *State* v. *Shifflett*, supra [754]." *State* v. *Coleman*, 14 Conn. App. 657, 678, 544 A.2d 194, cert. denied, 208 Conn. 815, 546 A.2d 283 (1988).[8]

"A trial court has broad discretion to comment on the evidence adduced in a criminal trial. . . . A jury

[8] The defendant claims that the reasonably probable standard applies to his claim of unfair comment and that the reasonably possible standard applies to his claim of jury confusion concerning *Troupe*. The defendant has cited no law in support of either claim. Assuming without deciding, we have reviewed his claims of instructional impropriety by the reasonably possible standard.

trial in which the judge is deprived of the right to comment on the evidence and to express his opinion as to the facts . . . is not the jury trial which we inherited. . . . A trial court often has not only the right, but also the duty to comment on the evidence. . . . The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which they might find to be established . . . and therefore, we have stated that a charge must go beyond a bare statement of accurate legal principles to the extent of indicating to the jury the application of those principles to the facts claimed to have been proven. . . .

"The purpose of marshalling the evidence, a more elaborate manner of judicial commentary, is to provide a fair summary of the evidence, and nothing more; to attain that purpose, the [trial] judge must show strict impartiality. . . . The influence of the trial judge on the jury is necessarily and properly of great weight and his lightest word or intimation is received with deference, and may prove controlling. . . . To avoid the danger of improper influence on the jury, a recitation of the evidence should be not be so drawn as to direct the attention of the jury too prominently to the facts in the testimony on one side of the case, while sinking out of view, or passing lightly over, portions of the testimony on the other side, which deserve equal attention." (Citations omitted; internal quotation marks omitted.) *State* v. *Hernandez*, 218 Conn. 458, 461–62, 590 A.2d 112 (1991).

We have reviewed the portion of the trial court's charge cited by the defendant as consisting of unfair comment and conclude that it fairly relates the testimony of the constancy of accusation witnesses to the law. The facts as noted by the trial court are presented as claims or beliefs of the witnesses. There is nothing repetitive or unduly burdensome about the recitation. The defendant takes particular exception to the fact that the trial court once noted that the victim testified

that the defendant put his finger into her vagina. That fact was clearly in evidence and the trial court had a duty to recount it in its charge as it was pertinent to the question of penetration.

The defendant's claim that the trial court confused the jury by recounting the limitation imposed by *Troupe* on the testimony of constancy of accusation witnesses is without merit. The jury heard both lawyers mention the name of the case immediately prior to hearing S and the victim's mother give their constancy of accusation testimony. The jury was excused during the offers of proof. The defendant claims that the court's instructions led the jury to believe that S and the victim's mother had more to tell about the incident than their testimony provided and that the fresh complaint doctrine confused the jury. Here, the jury was likely to have concluded that the victim had told her mother and sister, probably her closest confidantes, exactly what had happened. The jurors might very well then have wondered why S and the victim's mother did not provide the details. The trial court's charge explained the legal reason, as set forth in *Troupe,* for not permitting a compounding of the victim's testimony for the protection of the defendant. This the trial court had an obligation to do. The charge did not possibly mislead the jury.

The judgment is affirmed.

In this opinion the other judges concurred.