# STATE OF CONNECTICUT *v.* DIANA LISEVICK
## (AC 19472)

Lavery, C. J., and Foti and Daly, Js.

Argued May 30—officially released September 4, 2001

*Moira L. Buckley*, deputy assistant public defender, with whom, on the brief, were *Pamela S. Nagy*, assistant public defender, and *Kevin Ward* and *Eric Wolfgram*, certified legal interns, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Rachel M. Baird*, former assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Diana Lisevick, appeals from the judgment of not guilty by reason of mental disease and defect,[1] rendered after a trial to the court,[2] of sexual assault in the first degree in violation of General Statutes § 53a-70[3] and impairing the morals of a child in

---

[1] The trial court's judgment of not guilty by reason of mental disease or defect, on the basis of the court's findings of fact, accords with General Statutes § 53a-13 (a), which provides: "In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law."

The court committed the defendant to the custody of the commissioner of mental health and addiction services for an examination in accordance with General Statutes § 17a-582 (a), which provides in relevant part: "When any person charged with an offense is found not guilty by reason of mental disease or defect pursuant to section 53a-13, the court shall order such acquittee committed to the custody of the Commissioner of Mental Health and Addiction Services who shall cause such acquittee to be confined, pending an order of the court pursuant to subsection (e) of this section, in any of the state hospitals for psychiatric disabilities . . . for an examination to determine his mental condition."

After the court rendered its finding, it continued the case for sixty days to satisfy the statutory mandates of § 17a-582. On March 10, 1999, the court committed the defendant to the custody of the psychiatric security review board for a period of not less than ten years.

[2] Practice Book § 42-34 provides: "In a case tried without a jury the judicial authority shall render a finding of guilty, not guilty, or not guilty by reason of mental disease or defect where appropriate."

[3] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under

violation of General Statutes (Rev. to 1995) § 53-21.[4] On appeal,[5] the defendant claims that the trial court improperly (1) allowed her to be involuntarily medicated, (2) denied her motion to compel the state to videotape all interviews with the minor victim and (3) allowed constancy of accusation witnesses to testify as to the details of the accuser's statements in violation of *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996) (en banc). We affirm the judgment of the trial court.

The court either found or could have reasonably found the following facts. On November 3, 1995, during the morning, the defendant engaged in sexual intercourse with her six year old son. The sexual intercourse consisted of cunnilingus. During the same incident, the defendant had other sexual contact with the victim. The November 3, 1995 sexual assaults occurred at the request and for the purpose of the defendant's sexual stimulation. The sexual assaults occurred at the victim's home, where he and the defendant resided.

The court held, on the basis of those findings of fact, which were proven beyond a reasonable doubt, that the defendant had committed the crimes of sexual assault in the first degree in violation of § 53a-70 and impairing the morals of a child in violation of § 53-21.

thirteen years of age and the actor is more than two years older than such person . . . ."

[4] General Statutes (Rev. to 1995) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[5] The defendant properly appeals to this court from the court's judgment of not guilty by reason of mental disease or defect. See *State* v. *Connelly*, 46 Conn. App. 486, 495, 700 A.2d 694 (1997), cert. denied, 244 Conn. 907, 908, 713 A.2d 829, cert. denied, 525 U.S. 907, 119 S. Ct. 245, 142 L. Ed. 2d 201 (1998).

At the time that the defendant committed those crimes, however, she suffered from schizophrenic affective disorder, a severe, chronic mental illness. The defendant suffered from severe distortions of reality that caused profound disturbances in her emotions and behavior. The defendant had been the victim of a traumatic rape and assault several years earlier, which enhanced her mental disorders. At that time, she suffered a serious head injury and the loss of an eye.

The defendant's psychotic and delusional mental state, at the time that she committed the crimes, resulted in her inability to make any rational judgments. The defendant's mental illness completely controlled her actions and thought processes.

On the basis of those findings, the court reasonably found by a preponderance of the evidence that, at the time the defendant committed the crimes, she lacked substantial capacity to appreciate the wrongfulness of her conduct. As a result, the defendant was unable to control her conduct within the requirements of the law. Additional facts will be set forth as they become relevant.

I

The defendant first contends that the court improperly concluded that the state satisfied its burden by clear and convincing evidence, under the first factor enumerated in *State* v. *Garcia*, 233 Conn. 44, 658 A.2d 947 (1995), on appeal after remand, 235 Conn. 671, 669 A.2d 573 (1996),[6] when the court ordered her to be

[6] *Garcia* set forth five factors that must be satisfied for "a court to authorize the involuntary medication of an incompetent defendant to render him competent to stand trial . . . ." *State* v. *Garcia*, supra, 233 Conn. 84–86.

The defendant also argues that the state failed to satisfy the other four *Garcia* factors. The defendant failed to preserve properly such claims at the trial level. The defendant asserts that her unpreserved claims are entitled to review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). For the reasons stated in this opinion, we do not reach the question of whether such review is warranted.

involuntarily medicated. That factor requires the state to demonstrate to a reasonable degree of medical certainty that involuntary medication of a defendant will render him or her competent to stand trial. We do not reach the merits of that claim.

The following facts are relevant to the resolution of this issue. Subsequent to the state's filing an information charging the defendant with the crimes previously set forth, the defendant timely filed a proper motion for a competency examination. The court granted the defendant's motion. On November 26, 1996, after conducting a hearing, the court found that the defendant was not competent to stand trial. The court committed the defendant to the department of mental health for ninety days. Thereafter, the state filed a motion for the involuntary medication of the defendant. On March 19, 1997, after conducting a hearing, the court granted the motion. The defendant did not immediately file an interlocutory appeal from the court's order.

In *Garcia*, our Supreme Court held that appellate jurisdiction was proper over an otherwise interlocutory appeal from a trial court's order for involuntary medication. Id., 66; see also *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983) (general final judgment test for otherwise interlocutory appeals). In *Garcia*, our Supreme Court held that a trial court's order for involuntary medication implicated the defendant's liberty interest protected under the due process clause of the fourteenth amendment to the constitution of the United States. As a result, the Supreme Court permitted immediate appellate review.

"It is apparent from the record that in this case the defendant was fully aware of his right to an interlocutory appeal" of the court's order for involuntary medication under *Garcia*. *State* v. *Boutwell*, 18 Conn. App. 273, 284, 558 A.2d 244, cert. denied, 212 Conn. 803,

561 A.2d 945 (1989). The defendant's counsel relied on *Garcia* when he challenged the court's order for involuntary medication. At the March 13, 1997 hearing, defense counsel addressed the court, stating: "Well, Your Honor, my concern is that the first requirement of *Garcia* is that the involuntary medication will render this defendant competent to stand trial and that needs to be based on a reasonable degree of medical certainty." Moreover, the defendant's counsel stated that he was prepared to argue that under *Garcia*, a court could never order someone without a medical history regarding the use of medication to be involuntarily medicated. The court did not agree with the defense counsel and found sufficient evidence to satisfy *Garcia*'s first factor.

Considering the defense counsel's assertions, it is apparent that he was fully aware of the defendant's right to an immediate interlocutory appeal. *Garcia* provides for immediate appellate review of an order to involuntarily medicate a defendant. Absent immediate review, a challenge to such an order will be effectively unreviewable. See footnote 9. In this case, the defendant's failure to pursue such an appeal under *Garcia* resulted in her waiver of any claim on the basis of her liberty interest in freedom from being involuntarily medicated with antipsychotic medication.

The defendant argues that the court's forced medication order is reviewable under *Riggins* v. *Nevada*, 504 U.S. 127, 112 S. Ct. 1810, 118 L. Ed. 2d 479 (1992). *Riggins* is inapposite. In *Riggins*, a defendant claimed that forced medication "denied him the ability to assist in his own defense . . . ."[7] Id., 131. As a result, the

---

[7] In Connecticut, a claim that forced medication denies a defendant the ability to assist in his or her own defense would be made pursuant to General Statutes § 54-56d (a), which provides: "A defendant shall not be tried, convicted or sentenced while he is not competent. For the purposes of this section, a defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense."

defendant in that case argued that the trial court denied him a fair trial. The defendant's reliance on *Riggins* is misplaced.

Unlike the defendant in *Riggins*, the defendant in the present case does not claim lack of competency resulting from her having been forcibly medicated. In fact, on two occasions, the court found the defendant competent after she had been forcibly medicated. The defendant stipulated to her competency to stand trial at a June 11, 1997 competency hearing.[8] On November 9, 1998, at a reevaluation hearing on the defendant's competency, the defense counsel stated that "despite my misgivings I have to concede in candor to the court that [the treatment team's report] is unequivocal that [the defendant] is competent and I have no evidence to the contrary . . . . Therefore, I have to concede that I don't think we can show at this time that [the defendant is not] competent . . . ." Consequently, the court found the defendant to be competent.[9]

---

[8] The defendant's stipulation of competency occurred nearly three months after involuntary medical treatment had commenced.

[9] Even if we assume arguendo that the defendant's claim is reviewable, a decision in the litigant's favor is not capable of redressing her grievance. The court's order is effectively unreviewable. See *United States* v. *Morgan*, 193 F.3d 252, 259 (4th Cir. 1999). The defendant already has been forcibly medicated, been determined competent on two occasions, and tried and found not guilty because of mental disease or defect.

Given the facts in this case, once the state infringed on the defendant's liberty interest in being free from involuntary medication, "the defendant's personal rights cannot be restored." *State* v. *Garcia*, supra, 233 Conn. 66. Our review of the court's findings in that regard would amount to "a purely academic exercise." *United States* v. *Morgan*, supra, 193 F.3d 259. The issue, therefore, is moot.

In addition, as she asserts in her reply brief, the defendant seeks review under an exception to the mootness doctrine. See *Stamford Hospital* v. *Vega*, 236 Conn. 646, 653–54, 674 A.2d 821 (1996). We do not reach the merits of that claim because "[i]t is a well established principle that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 593 n.26, 657 A.2d 212 (1995).

## II

The defendant next asserts what are in essence two distinct issues on appeal. First, the defendant contends that the court improperly denied her motion to compel the state to videotape all interviews with the victim and to make those videotapes available to the defense. Second, the defendant asks this court to invoke its supervisory authority to require the state, when conducting any interviews of children in matters involving their alleged sexual assault, to videotape and to disclose such videotapes to the defense. We disagree.

### A

We first address the issue of whether the court improperly denied the defendant's motion to compel the state to videotape all interviews with the victim. The following facts are relevant to our resolution of that claim. The record indicates that subsequent to the events that occurred on November 3, 1995, communications between the victim and the state had taken place. Namely, the victim spoke with Stacy Major, a social worker for the department of children and families, as early as February 22, 1996. At that time, the victim made allegations of sexual assault. There was no recording of that communication between Major and the victim. Subsequently, Major and Francis Sadlosky, an investigator for the department of children and families, interviewed the victim at his school on February 27, 1996. Sadlosky had a tape recording of that interview. On November 2, 1998, the defendant filed a motion for the recording of interviews. The court held a hearing on that motion on November 12, 1998. That same day, the prosecution planned to interview the victim. The defendant contended that the court should order that interview, and all interviews thereafter, to be videotaped. The court denied the motion.

The court held "that there's [nothing] in the Connecticut Practice Book that authorizes this court to mandate that the interview to be conducted by the assistant state's attorney of this child today prior to beginning the evidentiary portion of the trial and this court's interpretation of [Practice Book § 40-14] . . . seems to this court that such an order by this court would be contrary to the expression of the Practice Book and specifically [Practice Book] § 40-14."[10]

"[T]he granting or denial of a discovery request rests in the sound discretion of the trial court. . . . [T]hat decision will be reversed only if such an order constitutes an abuse of that discretion." (Citations omitted; internal quotation marks omitted.) *Babcock* v. *Bridgeport Hospital*, 251 Conn. 790, 820, 742 A.2d 322 (1999). We conclude that the court did not abuse its discretion.

In her brief, the defendant fails to argue that the court in fact abused its discretion in denying her motion. At the November 12, 1998 hearing, after considering the arguments, the court determined that it had no authority to order the procedure that the defendant sought. In this case, we agree with the court that Practice Book § 40-14 does not permit an order requiring the state to videotape interviews with the victim and then disclose such videotapes to the defense.

B

We now turn to the issue of whether the present case presents this court with a proper situation in which to

---

[10] Practice Book § 40-14 provides in relevant part: "Subject to Section 40-13 and except for the substance of any exculpatory material contained herein, Sections 40-11 through 40-14 does not authorize or require disclosure or inspection of:

"(1) Reports, memoranda or other internal documents made by a prosecuting authority or by law enforcement officers in connection with the investigation or prosecution of the case;

"(2) Statements made to prosecuting authorities . . . .

"(4) Records, correspondence, reports or memoranda to the extent that they contain the opinions, theories or conclusions of a prosecuting authority."

exercise its supervisory authority. The defendant argues that "[t]here is evidence that children who complain of sexual abuse are susceptible to suggestion by an interviewer's questioning, even though this effect is unintended." Consequently, the defendant urges this court to invoke its supervisory authority to command the state, retroactively, to videotape all interviews with the victim and to make those videotapes available to the defense.

Our Supreme Court has stated that "[a]ppellate courts possess an inherent supervisory authority over the administration of justice. . . . [O]ur supervisory authority is not a form of free-floating justice, untethered to legal principle. . . . Rather, the integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of our supervisory powers. . . . ([o]ur supervisory powers are invoked only in the rare circumstance where [the] traditional protections are inadequate to ensure the fair and just administration of the courts) . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Anderson,* 255 Conn. 425, 438–39, 773 A.2d 287 (2001).

We hold that "[t]his case does not present an appropriate situation in which to exercise our supervisory authority." Id., 439. There is no evidence in the record to support such an exercise of judicial power. The defendant points merely to the "possibility" of "taint" when a child alleging sexual assault is interrogated. The defendant cites sibling authority for her claim, but we are not persuaded by it.

The defendant relies on *State* v. *Michaels,* 136 N.J. 299, 642 A.2d 1372 (1994). In that case, the New Jersey Supreme Court recognized the real threat of manipulation of child testimony through the use of improper interrogation techniques. The court found that "[t]he interrogations undertaken in the course of [the

*Michaels*] case utilized most, if not all, of the practices that are disfavored or condemned by experts, law enforcement authorities and government agencies." Id., 313.

In *Michaels*, the court gave examples of the "obvious lack of impartiality on the part of the interviewer." Id., 314. For instance, "[o]ne investigator, who conducted the majority of the interviews with the children, stated that his interview techniques had been based on the premise that the 'interview process is in essence the beginning of the healing process.' " Id. The court noted that "[t]he record [was] replete with instances in which children were asked blatantly leading questions that furnished information the children themselves had not mentioned." Id. Moreover, "[f]ifteen of the thirty-four children were told, at one time or another, that [the defendant] was in jail because she had done bad things to the children . . . ." Id., 315. The investigators told the children that they "needed their help and that they could be little detectives." (Internal quotation marks omitted.) Id. Unlike the situation in *Michaels*, such pervasive dereliction of the interview process is not present in this case.

On the basis of the record, we are not now confronted with an "extraordinary case requiring this court to invoke its supervisory authority." *State* v. *Anderson*, supra, 255 Conn. 441. The court agreed with the assistant state's attorney that the policy reasons asserted by the defendant for a special exception mandating that prosecutors videotape or record certain witness statements are equally valid in many other cases, not only those involving children. We agree. To fashion an exception "would be inappropriate in the present case because it would not have sufficient boundaries to guide future trial courts. Rather, it would more likely create confusion as to the proper procedures to follow" regard-

ing the interrogation of children alleging sexual assault. Id.

### III

Finally, the defendant argues that the court improperly allowed constancy of accusation witnesses to testify about the details of the accuser's statements in violation of *State* v. *Troupe*, supra, 237 Conn. 284.[11] More specifically, the defendant argues that the court's admission of such inadmissible details proved the essential elements of the state's case, resulting in harm to the defendant.[12] We do not agree.

The defendant contends that the court allowed the state to "parade inadmissible details into the trial under the guise of constancy evidence, when in reality, these details were used to corroborate the substance of [the victim's] otherwise shaky testimony." More specifically, the defendant argues that the court admitted testimony comprised of "more details than those necessary to connect [the victim's] complaint to the charge . . . ." The record indicates otherwise.

The defendant objected to the testimony of both Sadlosky and Major. For instance, the defendant objected

[11] In *State* v. *Troupe*, supra, 237 Conn. 304, our Supreme Court held that "a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator."

In *State* v. *Orhan*, 52 Conn. App. 231, 243, 726 A.2d 629 (1999), we held that "[t]he controlling language from *Troupe* does not limit the identifying information that may be provided. It limits only the extent of the information provided. Our Supreme Court merely gave examples of how a sexual assault might be identified; it did not hold that that was the only testimony that could be provided."

[12] *Troupe* limits the use of constancy of accusation testimony. "Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes." *State* v. *Troupe*, supra, 237 Conn. 304.

to Sadlosky's testimony that "verbalize[d] the sounds [that the victim] made when imitating sounds the defendant allegedly made in response to the contact." The court admitted, over defense counsel's objection, "anatomical drawings on which [the victim] had circled the specific points of contact between himself and [the] defendant." In addition, Major testified, over defense counsel's objection, that the victim had told him that the defendant made him "touch her in—on her vagina, buttocks [and] breasts."

The constancy of accusation doctrine, which provides an exception to the exclusionary hearsay rule, is deeply rooted in Connecticut common law. Id., 297. As a rule of evidence, "[i]n determining whether to permit [constancy of accusation] testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant." (Internal quotation marks omitted.) *State* v. *Torres*, 60 Conn. App. 562, 573, 761 A.2d 766 (2000), cert. denied, 255 Conn. 925, 767 A.2d 100 (2001). "It is a fundamental rule of appellate review of evidentiary rulings that if [the] error is not of constitutional dimensions, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." (Internal quotation marks omitted.) *State* v. *Kelly*, 256 Conn. 23, 39, 770 A.2d 908 (2001); see also 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 60i. "Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Orhan*, 52 Conn. App. 231, 238, 726 A.2d 629 (1999). Regardless of whether, in fact, the court violated *Troupe*'s limitation on the admission of constancy of accusation testimony, we hold that the defendant has failed to show that such error, if it exists, resulted in "substantial preju-

dice or injustice." (Internal quotation marks omitted.) Id.

The court had the benefit of the testimony from the victim, Sadlosky and Major. The court allowed Sadlosky to testify as to some of the details regarding his interview with the victim.[13] Defense counsel objected. The court stated, "It seems to me, what *Troupe* doesn't say, but is a necessary implication of that decision, is that the witness can give at least a minimal, general description of what the attack consisted of, [because], otherwise, it would not be a constancy of accusation of a particular kind of attack."

We conclude that even if the court improperly admitted the challenged testimony, any error in that regard was of no consequence. In other words, even if the testimony was stricken from the record, the record would, nevertheless, remain sufficient to support the court's judgment.[14] For instance, in *Orhan*, we held it

---

[13] Over defense counsel's objections, the court admitted photographs that Sadlosky had spread on a table while he was interviewing the victim. The victim picked out the photographs that appeared as his mother and pointed to the areas that his mother had forced him to touch.

[14] There is sufficient testimony from the victim, Sadlosky and Major to support the court's judgment. At trial, the victim gave direct testimony concerning the sexual assaults. The victim testified on direct examination in relevant part as follows:

"[Prosecutor]: Did your mom say anything to you?

"[Victim]: No.

"[Prosecutor]: What exactly did she do when she—how did she put you in your room?

"[Victim]: She pulled me by my arm and put me in my room.

"[Prosecutor]: And where did you go when you went into your room?

"[Victim]: She pushed me on my bed.

"[Prosecutor]: Did you—did you—how were you dressed?

"[Victim]: I had my underwear and my T-shirt on.

"[Prosecutor]: And how was your mom dressed?

"[Victim]: She had a bathrobe on.

"[Prosecutor]: And what happened next.

"[Victim]: She sexually abused me.

"[Prosecutor]: Now, what—how—what, exactly, did she do next, in terms of your observations?

"[Victim]: She would make me rub her vagina, touch her breast. And she—

proper for a constancy of accusation witness to testify that the defendant "had touched [the victim's] *private parts* while she was sleeping . . . the night before." (Emphasis added; internal quotation marks omitted.) Id., 242.

In the present case, Sadlosky testified that the victim had told him that the defendant made him "touch" and "kiss" her "private parts." As *Orhan* established, such testimony is within *Troupe*'s parameters. Sadlosky's testimony indicated only that the defendant "had touched the victim where [she] should not have" and, at the defendant's request, that the victim had touched the defendant where and in a way he should not have. See id., 243. Sadlosky's testimony, therefore, supports the victim's direct testimony. Thus, the court could have used Sadlosky's testimony in the only permissible way, to corroborate the victim's direct testimony.

The court also heard Major's testimony. On direct examination she testified that the victim told her that the defendant had made "him touch her in—on the

---

would do stuff to me. And I would have to do it to her.

"[Prosecutor]: What happened when you pulled down your pants?

"[Victim]: She—she—she just started to rub me. And then, after that, she would pull down her—her—she would take off her bathrobe and she would make me touch her vagina, her breast."

As part of the prosecution's case-in-chief, the state called Sadlosky to the witness stand. Absent the testimony challenged in this appeal, Sadlosky's testimony adequately served to corroborate the victim's direct testimony. Sadlosky testified in relevant part:

"[Prosecutor]: After [the victim] had picked out the pictures . . . what did you next ask him in the interview?

"[Witness]: [The victim] had told me that his mother made him touch her private parts. Kiss [her] private parts. So, I asked him what—if he knew the names of the private parts. And he would give me names like breast and—and vagina and butt—butt.

"[Defense Counsel]: This is far outside what is permissible under *Troupe* now that *Troupe* might as well never have been decided. . . ."

The court overruled the objection, but cautioned the prosecutor that she was approaching *Troupe*'s limits. Subsequently, Major testified. Her testimony was similar to Sadlosky's and further supported the victim's allegations.

vagina, buttocks and breast." In response to defense counsel's objection, the court cut off Major's answer. The court agreed with defense counsel that Major's testimony had made clear the general nature of the allegations and that anything further would implicate *Troupe*.

Major's mere use of the words "vagina," "breasts" and "buttocks" is not impermissible. It is as if she used the term "private parts." It is commonly understood that the term "private parts" refers to sexual organs. See Webster's Ninth New Collegiate Dictionary (1986). Judicial preference for one term over another would serve merely to put form over substance. Our Supreme Court did not limit the exact terms a constancy of accusation witness could use in her testimony. See *State* v. *Orhan*, supra, 52 Conn. App. 243. Major's testimony, therefore, was within the scope of permissible constancy of accusation testimony. The court used her testimony permissibly to corroborate the victim's direct testimony.

Taken together, the testimony of Sadlosky and Major, absent the questionable details that the defense asserts on appeal, is sufficient to corroborate the victim's direct testimony. The record, therefore, is sufficient to support the court's judgment. Any evidence that the court might have admitted in contravention of *Troupe*'s limitations was harmless and did not affect the outcome of the case. The defendant, therefore, has failed to show substantial prejudice or injustice.

The judgment is affirmed.

In this opinion the other judges concurred.