# STATE OF CONNECTICUT *v.* ANTHONY TORRES
## (AC 18754)

Mihalakos, Zarella and O'Connell, Js.

Argued March 20—officially released November 7, 2000

*Avery S. Chapman*, special public defender, for the appellant (defendant).

*Bruce R. Lockwood*, deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Cara Eschuk*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Anthony Torres, appeals from the judgments of conviction, rendered after a jury trial, of ten counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a)[1] and four counts of risk of injury to a child in violation of General Statutes § 53-21.[2] The defendant claims that the trial court improperly (1) allowed the fiance of one of the

---

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person, or (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under the age of sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

Section 53-21 was amended during the period of the defendant's allegedly criminal actions, adding subdivision (2) effective October 1, 1995.

victims to sit next to the victim during her testimony, (2) allowed one of the victims to sit back in her chair during her testimony, thereby obstructing the defendant's view of her and (3) admitted constancy of accusation evidence.[3] We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. The defendant resided with the victims, D and J, and their mother for approximately eight years prior to his arrest, during which time the defendant often looked after D and J while their mother was at work. D was born in September, 1980, and J was born in February, 1978. The defendant was born in April, 1957.

For a period of almost six years, from October, 1990, to March, 1996, the defendant sexually assaulted D and J on numerous occasions. Both victims feared the defendant and what he might do to them if they told anyone about the abuse. On one occasion, the defendant threatened D by holding a knife to her neck and telling her that he would kill her if she told anyone about the abuse. At the time of this incident, D was twelve years old. The defendant also threatened J by using a weapon if she refused to have sex with him.

When D was fourteen years old, she told her mother that she was being sexually abused by the defendant. Although the victims' mother confronted the defendant with the allegations, which he denied, the victims' mother did not report or otherwise pursue the allega-

---

[3] Although the defendant also contends that "the court erred by admitting medical records without redacting certain statements contained therein," he has not briefed the issue. "Where an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Truelove & MacLean, Inc.*, 238 Conn. 337, 344 n.11, 680 A.2d 1261 (1996). We therefore do not address the issue of whether the court erred in admitting the medical records.

tions. The defendant continued to sexually abuse D and J.

In March, 1996, D told a school friend about an incident in which the defendant performed oral sex on her. Upon the urging of her friend, D reported the incident to a school counselor. D told the counselor that both she and her sister were being sexually abused by the defendant. When the school counselor questioned J, she admitted that she too was being sexually abused by the defendant.

D and J were taken to the hospital for physical examinations. Thereafter, both D and J spoke with an investigator from the department of children and families. D and J also gave statements to police from the Waterbury police department in which they alleged that they had been sexually abused by the defendant. The defendant was charged with the sexual abuse of D and J and, after a jury trial, was convicted of ten counts of sexual assault in the first degree and four counts of risk of injury to a child. This appeal followed.

I

The defendant first claims that the court improperly permitted J's fiance to sit next to her throughout her testimony. The defendant argues that the court should have held an evidentiary hearing at which the state was required to demonstrate by clear and convincing evidence that such an arrangement was necessary. The defendant further argues that the fiance's presence impermissibly bolstered the witness' credibility. We disagree.

At trial, J was called as a witness. Upon entering the foyer of the courtroom, she broke down and cried, "No, no, no." J refused to proceed into the courtroom to testify. The court thereafter excused the jury and took a recess. The state then made a motion to the court

seeking special accommodations for J's testimony. Although the court did not hold an evidentiary hearing, as the defendant requested, the court heard the parties' respective arguments on the state's motion. The court thereafter granted the state's request to allow J's fiance to sit outside the witness box and next to J during her testimony.

## A

The defendant argues that the court was required to hold an evidentiary hearing in which the state had to prove by clear and convincing evidence that J required special accommodations. The defendant argues that the state's failure to prove such a necessity by clear and convincing evidence, coupled with the court's decision allowing J's fiance to sit next to her during her testimony, violated his constitutional right to confrontation.

It is important to note that the defendant recognizes that General Statutes § 54-86g[4] is inapplicable to the

[4] General Statutes § 54-86g provides in relevant part: "(a) In any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years of age or younger, the court may, upon motion of the attorney for any party, order that the testimony of the child be taken in a room other than the courtroom . . . . Only the judge, the defendant, the attorneys for the defendant and for the state, persons necessary to operate the equipment and any person who would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony, except that the court may order the defendant excluded from the room or screened from the sight and hearing of the child only if the state proves, by clear and convincing evidence, that the child would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that a compelling need exists to take the testimony of the child outside the physical presence of the defendant in order to insure the reliability of such testimony. If the defendant is excluded from the room or screened from the sight and hearing of the child, the court shall ensure that the defendant is able to observe and hear the testimony of the child, but that the child cannot see or hear the defendant. . . .

"(b) In any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years of age or younger, the court may, upon motion of the attorney for any party, order that the following procedures be used when the testimony of the child is taken: (1) Persons shall be prohibited from entering and leaving the courtroom during the child's testimony; (2)

present situation.[5] The defendant claims, however, that the statute and the case law interpreting the statute are helpful in analyzing the present matter. The defendant cites *State* v. *Jarzbek*, 204 Conn. 683, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988), and *State* v. *Menzies*, 26 Conn. App. 674, 603 A.2d 419, cert. denied, 221 Conn. 924, 608 A.2d 690 (1992), in support of his position.

In *Jarzbek*, the defendant was charged with risk of injury to or impairing the morals of a child and sexual assault in the fourth degree. See *State* v. *Jarzbek*, supra, 204 Conn. 684. The state sought permission of the trial court to take the testimony of the minor victim by videotape outside the physical presence of the defendant. Id., 685. The court granted the state permission, and the videotaped testimony was entered into evidence.[6] Id., 687.

On appeal, the defendant claimed that the court's order concerning the videotaped testimony violated his constitutional right to confront the witnesses against him and to be present at trial. Id., 689. Our Supreme Court held that "a trial court must determine, at an evidentiary hearing, whether the state has demonstrated a compelling need for excluding the defendant from the witness room during the videotaping of a minor victim's testimony. In order to satisfy its burden of proving compelling need, the state must show that the

an adult who is known to the child and with whom the child feels comfortable shall be permitted to sit in close proximity to the child during the child's testimony, provided such person shall not obscure the child from the view of the defendant or the trier of fact . . . ."

[5] The defendant correctly recognizes that § 54-86g applies only to witness victims who are under thirteen years of age.

[6] The court in *Jarzbek* noted that "[a]lthough the [trial] court did not rely on General Statutes § 54-86g, because that statute did not become effective until after the initiation of this action, the videotaping procedure it approved is essentially the same procedure now prescribed by § 54-86g [a]." *State* v. *Jarzbek*, supra, 204 Conn. 686 n.2.

minor victim would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that the trustworthiness of the victim's testimony would be seriously called into question. Furthermore, the state bears the burden of proving such compelling need by clear and convincing evidence. . . . Although the trial court may consider the well-being of the witness as a significant factor in its analysis, the state cannot prove need simply by demonstrating that the victim would suffer some harm if forced to testify in the presence of the accused. We reiterate that, in light of the constitutional right of confrontation at stake here, the primary focus of the trial court's inquiry must be on the reliability of the minor victim's testimony, not on the injury that the victim may suffer by testifying in the presence of the accused." (Citations omitted.) Id., 704–705.

In the present case, unlike in *Jarzbek*, the defendant's right to confront the witnesses against him, face to face, was not impaired by the special arrangements allowed by the court, nor was his right to cross-examine the witness impaired in any way. The defendant remained in the courtroom throughout the two days of J's testimony. Accordingly, we find the defendant's reliance on *Jarzbek* misplaced.

The defendant's reliance on *Menzies* is slightly more compelling, but still unavailing. In *Menzies*, the state filed a motion for special procedures pursuant to General Statutes § 54-86g (b); see *State* v. *Menzies*, 26 Conn. App. 686; to which the defendant objected. The defendant specifically objected to the state's request that the witness' guardian ad litem be allowed to sit next to the child witness during her testimony on the ground that the guardian's presence enhanced the credibility of and heightened the sympathy for the witness. Id., 691. The trial court granted the state's request after holding an evidentiary hearing in which the court found that the

state had sustained its burden by clear and convincing evidence. Id., 690.

Notwithstanding that the trial court held an evidentiary hearing, we did not conclude in *Menzies* that subsection (b) of § 54-86g requires one. We stated: "Although the *Jarzbek* court concluded that General Statutes § 54-86g (a) requires that there be an evidentiary hearing prior to the court's adoption of the procedures outlined therein, no such similar requirement has yet been adopted with respect to the procedures outlined in subsection (b). Because the parties have not raised the issue of whether subsection (b) requires an evidentiary hearing, and because a full evidentiary hearing was conducted here, we need not address that question." Id., 689 n.13.

As previously noted, § 54-86g is inapplicable to the present case. We therefore need not decide whether § 54-86g (b) also requires an evidentiary hearing. Accordingly, we conclude that the defendant's reliance on *Menzies* is misplaced.

B

The defendant further argues that the presence of J's fiance impermissibly bolstered the witness' credibility. We disagree. The court's decision to allow J's fiance to sit outside the witness box and next to her during her testimony falls well within the court's broad discretion to ensure a fair trial and to administer justice.

"The function of the court in a criminal trial is to conduct a fair and impartial proceeding." (Internal quotation marks omitted.) *State* v. *Jupin*, 26 Conn. App. 331, 348, 602 A.2d 12, cert. denied, 221 Conn. 914, 603 A.2d 404 (1992). "A trial judge in a criminal case may take all steps reasonably necessary for the orderly progress of the trial. . . . When the rights of those other than the parties are implicated, [t]he trial judge has the

responsibility for safeguarding both the rights of the accused and the interests of the public in the administration of criminal justice." (Citations omitted; internal quotation marks omitted.) Id., 349. Moreover, "[t]he [ability] of a witness [to testify reliably] is a matter peculiarly within the discretion of the trial court and its ruling will be disturbed only in a clear case of abuse or of some error in law." (Internal quotation marks omitted.) *In re Brandon W.*, 56 Conn. App. 418, 426, 747 A.2d 526 (2000).

The evidence adequately supports the court's decision to allow J's fiance to be seated next to the witness during her testimony. The court based its decision on testimony concerning J's mental capacity[7] and the court's own observations of J's distress and anxiety about testifying.[8] Implicit in the court's decision is the finding that J required the accommodation in order to provide testimony.

Moreover, the court's cautionary instructions to the jury and to J's fiance limited the possibility that the presence of the fiance would bolster J's testimony. The court ordered J's fiance to refrain from communicating with J in any way while she testified. The court also

---

[7] Prior to J's testimony, the state called the school psychologist, who testified that J was "educable mentally retarded." This conclusion was drawn from the results of certain testing of J.

[8] The following colloquy occurred at trial:

"The Court: All right, based upon the testimony you heard from the witness this morning, the first witness, with respect to special circumstances regarding the witness [J] and based upon my own observation of the stress and anxiety that she exhibited upon entering the courtroom, I am going to allow these special provisions to be made to assist her in testifying today. I will allow [J's fiance] to sit where he is seated next to the witness and the witness stand. You are not to communicate in anyway with [J]. Do you understand that, sir?

"[J's Fiance]: Yes, Your Honor.

"The Court: All right. You cannot talk to her at all. You can't give her any signals or signs or anything. You are simply sitting there for moral support and nothing more. And that will help you, [J]?"

instructed the jury to disregard the fiance's presence and not to take any inference whatsoever from his presence.[9] Presented with these circumstances, we cannot conclude that the presence of J's fiance bolstered J's testimony. Accordingly, the court's decision was not an abuse of its broad discretion to ensure a fair and impartial trial.

## II

The defendant next claims that the court improperly permitted J to sit back in the witness chair, out of view of the defendant, during her testimony. We conclude that the record is inadequate for our review.

It is incumbent upon the appellant to take the necessary steps to provide an adequate record for appellate review. See Practice Book § 60-5; *Walton* v. *New Hartford*, 223 Conn. 155, 164–65, 612 A.2d 1153 (1992). "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's claims] would be entirely speculative." (Internal quotation marks omitted.) *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, 48 Conn. App. 605, 608–609, 710 A.2d 190 (1998).

At trial, the defendant did not make an offer of proof as to whether he could see the witness from where he was seated. During the court's consideration of whether

[9] The court instructed the jury as follows: "Now, you'll . . . note for the record that we have our witness on the witness stand and there is a young man who is sitting next to the witness. That young man is . . . identified as the fiance of the witness. You are not to infer anything at all by the fact— you're ordered not to infer anything at all by the fact that [he] is sitting alongside the witness. You are not to infer anything if he is to make any facial expressions or any gestures of any kind. You are to totally disregard that. He is sitting there for support of the witness and no other reason, and you are not to draw any inferences at all from his presence here today. Okay?"

the witness would be allowed to testify under special circumstances, defense counsel indicated that the witness needed to move forward in order for him to see her. The court asked defense counsel to move and position himself so that he could see the witness. Defense counsel did so and then remarked that the defendant should also have the right to view the witness.[10] Defense counsel did not make, however, an offer of proof concerning the defendant's inability to see the witness. Defense counsel's inability to see the witness and his subsequent acquiesce to move to see her do not translate into the defendant's inability to see the witness. Further, the witness testified over a period of two days, and, during that time, the defendant made no objection claiming that he could not see the witness.

The defendant's failure to make an offer of proof at trial or to file a motion for rectification of the record to reflect that his view of the witness was obstructed results in a record that is inadequate for our review. Accordingly, we decline to review the defendant's claim.

## III

Lastly, the defendant claims that the court improperly admitted constancy of accusation evidence. We do not agree.

---

[10] The following colloquy occurred:

"[Defense Counsel]: Yes, Your Honor. I'll segment my comments to two issues. Logistically, I need to pull forward so I can see her because I can't see her.

"The Court: Well, I'm going to ask then that you move your—relocate yourself so you'll be able to see her.

"[Defense Counsel]: Okay.

"The Court: All right?

"[Defense Counsel]: My client certainly I think should have a right to be able to view this witness.

"The Court: There is no such right accorded either under our constitution or our statutes. The right of confrontation does not include the right to see the witness, and our appellate courts have been clear on that.

"[Defense Counsel]: Note my exception to that, but moving along . . . ."

"The constancy of accusation doctrine is an exception to the hearsay rule and has existed in Connecticut since 1830." *State* v. *Grenier*, 55 Conn. App. 630, 646, 739 A.2d 751 (1999), cert. granted on other grounds, 252 Conn. 931, 746 A.2d 794 (2000). "It is well settled that the doctrine of constancy of accusation does not violate an accused's constitutional right to confrontation . . . or due process." (Citation omitted.) *State* v. *Cansler*, 54 Conn. App. 819, 824, 738 A.2d 1095 (1999). "The doctrine originally was premised on the arguably inaccurate premise that, if a woman had been sexually assaulted, it would be natural for her to confide in others." (Internal quotation marks omitted.) *State* v. *Orhan*, 52 Conn. App. 231, 238, 726 A.2d 629 (1999).

"In determining whether to permit [constancy of accusation] testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant." (Internal quotation marks omitted.) Id., 239. "[C]onstancy of accusation evidence is not admissible unless the victim has testified, and is subject to cross-examination, concerning the crime and the identity of the person or persons to whom the victim has reported the crime . . . ." *State* v. *Troupe*, 237 Conn. 284, 293, 677 A.2d 917 (1996); see also *State* v. *Lindstrom*, 46 Conn. App. 810, 816, 702 A.2d 410, cert. denied, 243 Conn. 947, 704 A.2d 802 (1997). "[W]hether evidence is admissible under the constancy of accusation doctrine is an evidentiary question that will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Orhan*, supra, 52 Conn. App. 243.

At trial, the state offered certain statements made by the victims to others that the defendant had sexually assaulted them. Those statements were admitted, and the court gave the jury specific instructions that the evidence was "admitted solely to corroborate or not

corroborate the complainant's testimony in court; to be considered by you only in determining the weight and credibility you will accord their testimony given here in this courtroom."

The defendant claims that the constancy of accusation evidence was improperly admitted because the testimony did not satisfy the "indicia of reliability" standard set forth in *Ohio* v. *Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980). The defendant's reliance on *Roberts* is misplaced.

In *Roberts*, the United States Supreme Court clarified that the confrontation clause ordinarily envisions "a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. *Mattox* v. *United States*, [156 U.S. 237, 242–43, 15 S. Ct. 337, 39 L. Ed. 409 (1895)]. These means of testing accuracy are so important that the absence of proper confrontation at trial calls into question the ultimate integrity of the fact-finding process. *Chambers* v. *Mississippi*, 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973), quoting *Berger* v. *California*, 393 U.S. 314, 315, 89 S. Ct. 540, 21 L. Ed. 2d 508 (1969)." (Internal quotation marks omitted.) *Ohio* v. *Roberts*, supra, 448 U.S. 63–64.

The *Roberts* court announced a two part test for determining whether former testimony may be admitted without infringing on a criminal defendant's right of confrontation. "That test requires (1) demonstration that the witness is unavailable to testify at trial, and (2) adequate indicia of reliability of the previous testimony." *State* v. *Williams*, 231 Conn. 235, 248, 645 A.2d

999 (1994). The "indicia of reliability" analysis, therefore, arises only when a witness is unavailable to testify. In the present case, J was available to testify. In fact, she testified at trial for two days.

The defendant further claims that the constancy of accusation evidence was more prejudicial than probative because "[t]he jury utilized such statements of proof of the facts at issue, and not just merely as corroborative of the complaining party." Notwithstanding the defendant's claim, the court specifically instructed the jury that the evidence was to be used only to corroborate the victim's testimony. The defendant does not offer any evidence that the jury utilized the statements in any way other than instructed and we will not assume any such misuse. The defendant has failed to show that a substantial prejudice or injustice has resulted from the constancy of accusation evidence. We conclude, therefore, that the court did not abuse its discretion in admitting the constancy of accusation evidence.

The judgments are affirmed.

In this opinion the other judges concurred.