******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* CARLOS C.*
(AC 36815)

Lavine, Sheldon and Mullins, Js.

*Argued November 19, 2015—officially released May 3, 2016*

(Appeal from Superior Court, judicial district of
Danbury, Pavia, J.)

*Naomi T. Fetterman*, with whom was *Aaron J. Romano*, for the appellant (defendant).

*Brett R. Aiello*, special deputy assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Sharmese L. Hodge*, assistant state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. The defendant, Carlos C., appeals from the judgment of conviction, rendered after a trial to the court, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70, and two counts of risk of injury to a child, one pursuant to General Statutes § 53a-21 (a) (1) and one pursuant to § 53a-21 (a) (2). On appeal, the defendant claims (1) that there was insufficient evidence to support his conviction, and (2) that the court violated his rights to a fair trial and to confrontation when it permitted the guardian ad litem to sit near the victim while the victim testified. We affirm the judgment of the trial court.

The trial court was presented with the following evidence during the defendant's criminal trial. The victim was born in 1996. In 2005, the victim's mother met and began dating the defendant. In 2006, the victim's mother moved into the defendant's home along with the victim and the victim's younger brother. In 2007, the victim's mother married the defendant.

Initially, the victim got along well with the defendant, but, after they moved into the defendant's home, the defendant began touching the victim inappropriately. The defendant would rub her thighs or slap her buttocks, and, when the victim would protest, he would offer her money and tell her not to say anything to anyone. The victim began to notice that, although she went to bed with clothing on, when she awoke in the morning, she often was not wearing any clothing. She soon realized that the defendant was entering her bedroom in the early hours of the morning, after her mother had left the home to deliver newspapers after 1 a.m.

Around this time, the defendant's sexual assaults escalated. He engaged in penile-vaginal intercourse with the victim on several occasions, causing the victim to experience pain, and to bleed on one occasion. During these assaults, the defendant removed his pants but kept on his shirt. He also told the victim to be quiet, and he threatened to throw her family out of his home if she told anyone about his assaults.

At some point during the 2006–2007 school year, the victim moved into the home of her father, while her mother and her younger brother remained in the home of the defendant. The defendant occasionally would pick up the victim to bring her to his home to see her mother. During these rides, he would inappropriately touch the victim on her thighs and buttocks.

In 2012, the victim disclosed this abuse to her boyfriend, who encouraged her to tell someone. On April 7, 2012, the victim disclosed the abuse to her father, who immediately took her to the police station to file a report. The defendant later was arrested and charged with one count of sexual assault in the first degree and two counts of risk of injury to a child.

The defendant elected to be tried by the court. Following the trial, the court found the victim to be credible, specifically stating: "[T]he court . . . heard the testimony of the complainant . . . [who] was on the stand for almost . . . a full . . . a complete day of testimony. She testified . . . consistently throughout the course of the day. She never wavered in her allegations with regard to what happened. She handled cross-examination and various questions that came at her, again, without changing her story or her consistency."

The court also found that the victim "specifically [had] alleged that there was sexual intercourse by way of vaginal intercourse [that] took place. That there was penetration in that the defendant penetrated by way of his penis her vagina, that there was vaginal intercourse beyond just the touching as part of the risk of injury counts with regard to sexual intercourse [and the court] want[ed] to make it clear that that evidence was absolutely on the record and that [the] court credit[ed] her account of the vaginal intercourse as she [had] described it repeatedly throughout the course of her day of testimony." The court, thereafter, convicted the defendant on all counts. This appeal followed.

I

The defendant claims that the evidence was insufficient to sustain his conviction because there was no physical evidence introduced during the trial, and, therefore, the only evidence to support the charges was the testimony of the victim, who was inconsistent and unreliable. He contends that "[w]here, as in this case, the witness' testimony is so discrepant, the court's determination of credibility was clearly erroneous." The state responds: "Because the defendant's sufficiency of the evidence claim hinges entirely on his challenge to the express, unassailable credibility determination on the part of the fact finder, his claim must fail." We agree with the state.

"When reviewing a sufficiency of the evidence claim, we do not attempt to weigh the credibility of the evidence offered at trial, nor do we purport to substitute our judgment for that of the [fact finder]. Instead, our review consists of a two-step process in which we construe the evidence presented at trial in a light most favorable to sustaining the verdict . . . and then determine whether the [fact finder] could reasonably have found, [on the basis of] the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Ortiz*, 312 Conn. 551, 572, 93 A.3d 1128 (2014).

"We assume that the [fact finder] credited the evidence that supports the conviction if it could reasonably have done so. Questions of whether to believe or to disbelieve a competent witness are beyond our review.

As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . Our review of factual determinations is limited to whether those findings are clearly erroneous. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Osoria*, 86 Conn. App. 507, 514–15, 861 A.2d 1207 (2004), cert. denied, 273 Conn. 910, 870 A.2d 1082 (2005).

On appeal, the defendant claims that the evidence was insufficient to support his conviction because the victim's testimony was inconsistent and unreliable. We conclude that this claim, for all practical purposes, does not challenge the sufficiency of the evidence. Rather, the defendant seeks to have us examine the credibility of the victim, which we are unable to do. See *State* v. *Franklin*, 115 Conn. App. 290, 292, 972 A.2d 741 (defendant's claim "that the victim's testimony was inconsistent and unreliable . . . [not] actually a sufficiency of the evidence claim . . . [because defendant] asks this court to examine the credibility of a witness"), cert. denied, 293 Conn. 929, 980 A.2d 915 (2009); *State* v. *Michael G.*, 107 Conn. App. 562, 567, 945 A.2d 1062 ("defendant's claim, although clothed in sufficiency of the evidence language, in reality challenges the credibility of M's testimony," which we, on appeal, are unable to assess), cert. denied, 287 Conn. 924, 951 A.2d 574 (2008). "Because it is the sole province of the trier of fact to assess the credibility of witnesses, it is not our role to second-guess such credibility determinations." *State* v. *Franklin*, supra, 292. Accordingly, the defendant's claim fails.

## II

The defendant next claims that by allowing the guardian ad litem to sit closer[1] to the victim while the victim testified, the court violated the defendant's right to a fair trial and his right to confrontation under both the federal constitution and the state constitution, and demonstrated personal bias. With respect to his due process right to a fair trial claim, the defendant argues that the trial court was not impartial. Specifically, he claims that by permitting this special accommodation, without requiring the state to demonstrate a compelling need for it, "the complainant has been accorded the status of a 'child victim' by the trial court," despite the fact the she was nearly eighteen years old when she testified and did not fall within the chronological purview of General Statutes § 54-86g.[2] He claims that the court validated the victim's "alleged victimization" and thereby "eviscerated [the defendant's] presumption of innocence." The defendant further argues that the court's "consideration of [the complainant] as a 'victim' necessarily means that the trial court believed a crime to have been committed, and that the defendant was

thereby guilty. . . . [The court's] decision [is] devoid of any evidence of compelling need and [is] representative only of the court's predetermination of the defendant's guilt."

With respect to his right to confrontation claim, which the defendant included in his appellate brief as part of his due process claim, the defendant contends that the court permitted the guardian ad litem to act as a "buffer to shield [the victim] from cross-examination," thereby interfering with his right to confrontation.[3] Given that the defendant is not claiming that he was unable to have a face-to-face confrontation with the victim—which he clearly had—we are at a loss to discern in what way the guardian ad litem acted as a "buffer to shield" the victim in violation of his right to confrontation, and the defendant does not explain this in his brief. As such, although he states that he also is making a claim under the confrontation clause, we review this claim under the same rubric as we review his due process claim, namely, that the alleged constitutional error here is that the court permitted this accommodation without requiring the state to show a compelling need for the accommodation, demonstrating the trial court's bias and predetermination of the defendant's guilt.

The defendant contends that our standard of review for his constitutional claims is one of "inherent prejudice" and that he need not prove actual harm. The state argues that the court did not abuse its discretion in permitting the guardian ad litem to sit near the victim while the victim testified. It also argues: "Here, the defendant's claim that the trial court was partial and incapable of divorcing [the victim's] need for an accommodation from a determination that she was credible is not only unreasonable, but it fails to find any support in the record."

The following additional facts are relevant. During direct examination, the prosecutor asked the victim to explain what the defendant would do to her after he removed her clothing. The victim broke down emotionally and stated that the defendant "first . . . would begin by touching" her. The prosecutor responded: "That's okay, if it's hard, just, you know, try to breathe, take your time, okay . . . ." The victim then said she was sorry. The prosecutor asked for a moment, and the victim was given water and tissues. The court then took a short recess.

Following the recess, at the request of the prosecutor and over the objection of the defendant, the court permitted the guardian ad litem to sit closer to the victim. Specifically, the court ruled that the guardian ad litem could sit closer to the victim "for whatever moral support that brings. But, obviously, no communication and no kind of eye direction to testify in one way or the other, okay, the testimony has to be just from this partic-

ular witness."[4]

After thoroughly considering the defendant's brief and his reply brief, along with his oral argument before this court, it appears that the essence of the defendant's claim boils down to one of judicial bias, but in the form of an alleged structural error in which harm is inherent and need not be demonstrated. Essentially, the defendant argues that, because the trial court permitted the guardian ad litem to sit near the victim as an accommodation for the victim, without requiring the state to show a compelling need for the accommodation, the court demonstrated that it had predetermined that the complainant was a victim before the completion of evidence. This, he contends, forced him to endure a trial by a judge who was not impartial and who did not presume his innocence. As a result, he contends, he suffered inherent prejudice.[5] We conclude that the defendant's claim is without merit, as he has failed to demonstrate any lack of impartiality on the part of the trial court.

A claim of judicial bias is a very serious matter. "Accusations of judicial bias or misconduct implicate the basic concepts of a fair trial. . . . It is a well settled general rule [however] that courts will not review a claim of judicial bias on appeal unless that claim was properly presented to the trial court via a motion for disqualification or a motion for mistrial." (Citation omitted; internal quotation marks omitted.) *State* v. *Eric M.*, 79 Conn. App. 91, 102–103, 829 A.2d 439 (2003), aff'd, 271 Conn. 641, 858 A.2d 767 (2004). Nevertheless, our Supreme Court has recognized that "a claim of judicial bias strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary. . . . No more elementary statement concerning the judiciary can be made than that the conduct of the trial judge must be characterized by the highest degree of impartiality. If [the judge] departs from this standard, he [or she] casts serious reflection upon the system of which [the judge] is a part. . . . We review this [unpreserved] claim [of partiality], therefore . . . under a plain error standard of review." (Citations omitted; internal quotation marks omitted.) *Knock* v. *Knock*, 224 Conn. 776, 792–93, 621 A.2d 267 (1993).

"In reviewing a claim of judicial bias, this court employs a plain error standard of review. . . . The standard to be employed is an objective one, not the judge's subjective view as to whether he or she can be fair and impartial in hearing the case. . . . Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification." (Citation omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Burton*, 299 Conn. 405, 416, 10 A.3d 507 (2011).

"The function of the court in a criminal trial is to

conduct a fair and impartial proceeding. . . . A trial judge in a criminal case may take all steps reasonably necessary for the orderly progress of the trial. . . . When the rights of those other than the parties are implicated, [t]he trial judge has the responsibility for safeguarding both the rights of the accused and the interests of the public in the administration of criminal justice. . . . Moreover, [t]he [ability] of a witness [to testify reliably] is a matter peculiarly within the discretion of the trial court and its ruling will be disturbed only in a clear case of abuse or of some error in law." (Citations omitted; internal quotation marks omitted.) *State* v. *Torres*, 60 Conn. App. 562, 569–70, 761 A.2d 766 (2000), cert. denied, 255 Conn. 925, 767 A.2d 100 (2001).

We have examined the record, including the transcript of what transpired at trial, and we conclude the record is devoid of any manifestation of partiality or bias on the part of the trial court. We also point out that the defendant has failed to direct us to anything in the record that would rebut our presumption of impartiality other than his mere allegation that the court's allowance of this procedure demonstrated some type of inherently prejudicial bias and partiality.[6] See *State* v. *Rizzo*, 303 Conn. 71, 119, 31 A.3d 1094 (2011) ("the law presumes that duly elected or appointed judges, consistent with their oaths of office, will perform their duties impartially . . . and that they are able to put aside personal impressions" [citation omitted]); *Stefanoni* v. *Darien Little League, Inc.*, 160 Conn. App. 457, 465, 124 A.3d 999 (2015) (same).

Indeed, it is clear from the record that the court was careful to ensure that the defendant could see the victim while she testified. The court also ensured that the defendant had a full and fair opportunity to cross-examine the victim. Thus, when it permitted the guardian ad litem to sit nearer to the victim while the victim testified, overruling the objection of the defendant, the court merely was attempting to make a minor witness more comfortable as she resumed her testimony after having broken down emotionally during her testimony before the recess. There is no indication in this record that the court predetermined the defendant's guilt or that the court in any way was not an impartial adjudicator. Accordingly, the record disclosed no judicial bias and, therefore, no structural error based on judicial bias. Ultimately, "[t]he fact that a trial court rules adversely to a [defendant], even if some of these rulings were to be determined on appeal to have been erroneous, does not demonstrate personal bias." *Bieluch* v. *Bieluch*, 199 Conn. 550, 553, 509 A.2d 8 (1986). We conclude that the defendant's claim, therefore, is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline

to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] The record indicates that the guardian ad litem already was sitting in the jury box during the victim's testimony. It is the accommodation, namely, permitting the guardian ad litem to sit closer to the victim that is the subject of this claim on appeal.

[2] General Statutes § 54-86g (b) provides, in relevant part: "In any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years of age or younger, the court may, upon motion of the attorney for any party, order that the following procedures be used when the testimony of the child is taken . . . (2) an adult who is known to the child and with whom the child feels comfortable shall be permitted to sit in close proximity to the child during the child's testimony, provided such person shall not obscure the child from the view of the defendant or the trier of fact . . . ."

[3] The defendant has not contended that the guardian ad litem actually blocked his sight of the victim or in any way interfered with the court's ability to see her. Thus, this is not a case in which the defendant's right to face-to-face confrontation has been infringed or a case in which the court, as the fact finder, did not have an adequate opportunity to assess the credibility of the witness. In fact, the transcript demonstrates that the court took great pains to ensure that the defendant could see the victim while she testified. See footnote 4 of this opinion.

Additionally, insofar as the defendant's argument may also be read to contend that his right to confrontation was infringed because the guardian ad litem asked for a recess during the defendant's cross-examination of the victim, we note that the defendant did not voice any objection to the request, and the record does not disclose why the court took a recess at that time. Furthermore, following the recess, the defendant had an opportunity to continue his cross-examination of the victim. At no point did he claim that his cross-examination was hampered in any way by the guardian ad litem's request for a recess. Accordingly, we decline to review this aspect of the defendant's argument. See *State* v. *Combs*, 51 Conn. App. 700, 701–702, 725 A.2d 349 (1999) ("Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's claims] would be entirely speculative." [Internal quotation marks omitted.]); see also *State* v. *Torres*, 60 Conn. App. 562, 571, 761 A.2d 766 (2000) (claim that trial judge improperly permitted victim to sit back in witness chair, out of view of defendant, not reviewable because record inadequate and review would require speculation), cert. denied, 255 Conn. 925, 767 A.2d 100 (2001).

We also note that due to a malfunction in the recording equipment on January 29, 2014, a portion of the victim's cross-examination, which included the time frame when the guardian ad litem asked for a recess, was not recorded. The parties, on February 20, 2014, stipulated to a reconstruction of that portion of the transcript, which was comprised of the notes of the court reporter and the recollection of counsel. Although the defendant quotes some of the relevant portions of that transcript in his brief, he has not included it in his appendix. The state has provided in its appendix, the portion of the reconstructed transcript that contains the request for a recess by the guardian ad litem. The stipulated reconstructed transcript has also been provided as a court exhibit.

[4] Following the recess, the following colloquy occurred:

"[The Prosecutor]: Your Honor . . . if I could just ask permission to have the guardian ad litem was sitting in the jury box if she could just be seated a little closer to the witness? And I understand she's not allowed to speak with her at all, but just for support purposes.

"[Defense Counsel]: Um—

"The Court: Any issue?

"[Defense Counsel]: Yeah, Your Honor . . . I object to that. I mean, this is the time for her, she's—she's charged my client and making some claims. I don't think it's appropriate for the guardian ad litem to sit there. I mean, this young lady is seventeen years old, about to be eighteen. She's almost an adult. I think she could sit there on her own.

"The Court: All right. I will say this. I think that we can, certainly, have the guardian [ad litem] at some point that may be a little more accessible, but agreed, she can't have any discussion.

"So, instead of having her, like, right next to, we could have her . . . up over here. We'll just move the chair there, and for whatever moral support that brings. But, obviously, no communication and no kind of eye direction to testify in one way or the other, okay, the testimony has to be just from this particular witness.

"[Defense Counsel]: And, Your Honor, I'm going to ask if the . . . witness

could move over to the side, I mean, we're having a hard time seeing her.

"[The Prosecutor]: I don't think visual aids are necessary.

"The Court: All right. So, we need to be able to, obviously, if you want to move and go to a different location, I'm not going to force her to sit in some particular spot. You know, you're wel—you have access to this whole room, and, if you would rather go stand over there (indicating), feel free to do so . . . .

"[Defense Counsel]: It's more the defendant, Your Honor, he can't see her from where he is sitting.

"[The Prosecutor]: Well, that's his—

"The Court: Well, not—not really, because we, kind of, have to deal with the—the way that the courtroom is structured. Um, all right. So, I'm going to do this, maybe, the state can assist me and just—I can't, obviously, see exactly where it is, but I can tell that it's more toward me—

"[The Prosecutor]: Your Honor, if I—

"The Court: (Continuing) —maybe, we could just get a more—

"[The Prosecutor]: I'm happy to represent [to] the court that from this angle, standing directly behind the defendant, I have a clear and perfect view of all parties—

"[Defense Counsel]: Counsel's standing—

"[The Prosecutor]: (Continuing) —forward.

"[Defense Counsel]: (Continuing) —he's sitting.

"[The Prosecutor]: Okay. I have a clear view.

"[Defense Counsel]: Just why don't you—

"The Court: Look—Look, we're going to do—we're not going to do objections to every little thing, right. So, here we go; if you feel and you're, as an officer of the court, are representing to me that you're having difficulty seeing this particular witness, I'm—I'm going to accommodate that, but, we're going to also make it so that she can testify here.

"So, to the extent that you are able to just, kind of, move over, so you're more in the center, I would appreciate that and I know that you are speaking into that mic and everybody is saying that they can hear you, so I appreciate that as well.

"[The Victim]: Um—

"The Court: All right. You take your time.

"[The Victim]: Can you move the trash can here, so I could—

"[The Prosecutor]: Yes.

"[The Victim]: Thank you.

"[The Prosecutor]: You're welcome. Sorry, Your Honor."

Thereafter, the prosecutor resumed questioning the victim.

[5] We are not necessarily persuaded that this is the type of claim wherein a structural error could be established. Indeed, a claim of judicial bias that constitutes structural error normally involves some extrinsic factor, not occurring in the courtroom, that would implicate a defendant's due process rights, such as bias based on a direct, personal, substantial pecuniary interest. See *Tumey* v. *Ohio*, 273 U.S. 510, 521–23, 47 S. Ct. 437, 71 L. Ed. 749 (1927) (violation of due process where court invalidated and found inherently prejudicial procedure wherein mayor of village, who was responsible for assessing fines against defendants convicted of violating state's prohibition act, received costs, in addition to regular salary, as compensation for hearing such cases, but no costs were paid to mayor unless defendant was convicted); *State* v. *Rizzo*, 303 Conn. 71, 116, 31 A.3d 1094 (2011) ("United States Supreme Court has found judicial bias claims to be due process violations only in egregious cases involving actual bias or unusual circumstances creating an intolerably high risk thereof, typically, when the judge had a pecuniary interest or some other personal stake in the outcome of the case").

In the present case, the defendant does not allege that any extrinsic factor affected the impartiality of the court. Rather, he claims that the procedure the court allowed reflected its bias. At common law, claims concerning a judge's personal bias or prejudice would not form a sufficient basis for imposing a constitutional requirement under the due process clause, however, and, thus, such personal bias or prejudice could not amount to structural error. See *Caperton* v. *A. T. Massey Coal Co.*, 556 U.S. 868, 877, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009) (under common law, disqualification for bias or prejudice not permitted as those matters left to statutes and judicial codes; accordingly, personal bias or prejudice alone not sufficient basis for imposing due process requirement).

Nevertheless, there are some circumstances where a judge's personal bias or prejudice could rise to the level of structural error. Id., 877–79 (concluding that in addition to cases demonstrating personal financial interest of judge, structural error also may be found where newly elected appellate judge participates in appeal that was pending during his campaign and where judge's campaign had received financing from party prevailing in appeal). In the present case, however, as explained later in this opinion, the defendant

has failed to establish that the court expressed or demonstrated any type of personal bias; accordingly, we have no occasion to address whether any personal bias amounted to structural error.

[6] We also note that the defendant, during trial, neither requested that the judge disqualify herself nor told the judge that he thought she was demonstrating partiality. Additionally, the defendant did not file a motion for new trial or for a mistrial on the basis of judicial bias. The defendant failed to raise any claim before the trial court that the judge's action in permitting the guardian ad litem to sit in closer proximity to the victim during the victim's testimony in any way infringed on his right to confrontation or to a fair trial.

_____